IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LAURA SENNETT, )
    Plaintiff, )
)
v. ) Case No. 1:10cv1055
)
UNITED STATES OF AMERICA, )
    Defendant. )

## MEMORANDUM OPINION

At issue on the government's motion to dismiss, or in the alternative for summary judgment, is whether the "suspect exception" to the Privacy Protection Act of 1980 ("PPA"), 42 U.S.C. §§ 2000aa(a)(1), (b)(1), bars plaintiff's claim that federal law enforcement officers violated her PPA rights by searching her home and seizing photographs and photographic equipment. The PPA's "suspect exception" applies only where government officials have probable cause to believe that the target of the search has committed an offense, and the materials seized are related to that offense. Here, the record evidence establishes that there was probable cause to believe that plaintiff was involved in the vandalism of the Four Seasons Hotel on April 12, 2008, and the subsequent search of plaintiff's home related to the investigation of that incident. Accordingly, the PPA's "suspect exception" applies, and summary judgment must be granted in favor of the government.

I.[1]

Plaintiff, Laura Sennett, a citizen of Virginia, claims to be a photojournalist specializing in the coverage of demonstrations, protests, and grassroots activism. Sennett alleges that she has published photographs and commentary on her blog and website, and that her photographs have

---

[1] The facts recited herein are derived from the pleadings and the record taken as a whole, and are not materially disputed.

appeared in prominent media outlets, including the Toronto Free Press, Cable News Network ("CNN"), The History Channel, and Radar Magazine. Sennett further alleges that she has regularly used the pseudonym, "Isis," when publishing photographs.

On April 11, 2008, Sennett received a phone call with a tip that individuals were planning a demonstration against the International Monetary Fund ("IMF"). Sennett's source informed her that the demonstration would occur in the early morning hours of April 12, 2008, at the Four Seasons Hotel in Washington, D.C., where at least some of the delegates participating in the IMF's annual spring meeting were lodged. Sennett claims she did not know that any crimes were to be committed at the demonstration.[2]

At approximately 2:30 a.m. on April 12, 2008, a group of approximately sixteen individuals—some of whom were wearing masks, black hooded jackets, and sunglasses to conceal their identities—approached the main entrance of the Four Seasons Hotel. Many of these individuals entered the hotel lobby and began throwing firecrackers and other smoke generating pyrotechnic devices. After activating the smoke devices, the vandals retrieved paint-filled balloons from their backpacks and threw them at various sculptures and statues located in the lobby. As they ran from the lobby, one of the vandals shattered a large glass window with an unknown object. All of the vandals fled the area on foot or bicycle. The hotel management's staff estimated the damage at more than $200,000.

The hotel's security cameras show that a white female, later identified as Sennett, arrived at the hotel within seconds of the group. Like others in the group of vandals, Sennett was

---

[2] Sennett has submitted a sworn statement that "[she] did not know that any crimes were to be committed at the demonstration." 01/10/2011 Sennett Decl. ¶ 2. While this statement is not rebutted by the government, it borders on implausible. It seems unlikely that a reasonable person would believe that protesters had scheduled a lawful, peaceful demonstration to begin at 2:30 a.m., a time at which most people are sleeping and would not know the protest was occurring.

dressed in dark clothing. She also wore a light-colored beret and black combat boots. Also similar to many of the vandals, Sennett carried a backpack. While most of the vandals entered the hotel lobby, Sennett and some members of the group remained outside of the hotel's front entrance. There, Sennett photographed (or recorded) the incident as it unfolded with a small, handheld camera. Sennett did not display any press credentials nor did she carry any photographic equipment other than the small, handheld camera. After vandals employed smoke-generating devices, they emerged from the building and began to run from the area. Sennett fled from the hotel at the same time and, initially, in the same general direction as the group.[3]

The incident at the Four Seasons Hotel was investigated by Task Force Officer ("TFO") Vincent Antignano, a Detective with the Prince William County Police Department and a Special Deputy United States Marshal on the Federal Bureau of Investigation's Joint Terrorism Task Force ("FBI JTTF"). During the course of his investigation, TFO Antignano reviewed the Four Seasons Hotel's security camera footage, which revealed that an unidentified female—wearing a light-colored beret and combat boots—photographed the incident as it unfolded and then fled from the hotel. A reliable source advised TFO Antignano that the unidentified female in the

---

[3] Sennett submitted a sworn affidavit in which she states that "[she] ran from the hotel because [she] became scared of the protest and its criminal development." 01/10/2011 Sennett Decl. ¶ 6. She also claims that "[she] ran away by [herself], not with any of the other group members." *Id.* ¶ 7. Sennett's sworn declaration is not necessarily inconsistent with the security camera footage. The security camera only shows the area immediately outside the front entrance of the hotel lobby, and it reveals that Sennett and the vandals initially fled in the same general direction. It is entirely possible that Sennett and the vandals ran in different directions once they were beyond the view of the hotel's security cameras. It borders on implausible, however, that Sennett fled from the hotel because she was afraid of the vandals. The security camera footage shows that Sennett initially took pictures a few feet away from the hotel's entrance and then moved even closer, presumably to get better photographs of the vandalism as it occurred. The security camera footage also shows that she fled along with and in the same initial direction as the vandals. Thus, Sennett's own conduct suggests that she was not frightened by the vandals or their conduct.

security camera video was frequently seen at demonstrations in the Washington, D.C. area. Using open source websites such as Google and YouTube, the unidentified female was observed on videotape at two other demonstrations in Washington, D.C. Another reliable source advised TFO Antignano that the unidentified female went by the name "Isis," and the source provided TFO Antignano with her cellphone number. Using this information, TFO Antignano determined that the unidentified female in the security camera video was Sennett, and through physical surveillance, TFO Antignano was able to identify Sennett's residence.

On September 22, 2008, TFO Antignano procured a search warrant for Sennett's residence from the Arlington County Circuit Court. On the basis of TFO Antignano's sworn affidavit, which recounted the facts from the security camera footage and TFO Antignano's subsequent investigation, the magistrate concluded that there was probable cause to believe that evidence relating to the following three offenses would be found at Sennett's residence: (1) Va. Code § 18.2-77 (Burning or destroying dwelling house, etc.); (2) Va. Code § 18.2-85 (Manufacture, possession, use, etc., of fire bombs or explosive materials or devices; penalties); and Va. Code § 18.2-137 (Injuring, etc., any property, monument, etc.).[4] The warrant authorized law enforcement officers to search Sennett's residence and person for computers, digital media, clothing, smoke generating devices, and other items relating to the April 12 Four Seasons incident.

On September 23, 2008, approximately a dozen armed law enforcement officers, including TFO Antignano, executed the search warrant. The officers allegedly seized about

---

[4] The government, quite correctly, does not argue that the magistrate's issuance of a search warrant is evidence of probable cause that Sennett was involved in the April 12 Four Seasons vandalism incident. The magistrate did not conclude that there was probable cause to arrest Sennett, but only that there was probable cause to search her home for evidence of the vandalism.

- 4 -

twenty-six items, including an external hard drive containing more than 7,000 photographs, two computers, several cameras, and several camera memory cards. Plaintiff asserts that these items constituted her entire stock of digital photographs, all of her professional work product, and nearly all of the equipment she needed to maintain her profession as a photojournalist. During the search, at least three officers, including TFO Antignano, allegedly told Sennett that they knew she was a photojournalist. Sennett alleges that one of the officers told her that he had seen photographs she had taken of a protest of the Republican National Convention, which were published in the media.

After the search, law enforcement officers analyzed Sennett's computer equipment. This analysis revealed that Sennett corresponded with several extremist suspects in the Washington, D.C. area, but law enforcement officers were unable to locate any photographs of the April 12 Four Seasons incident. On March 11, 2010, the FBI filed a memorandum requesting permission to close the Sennett investigation, noting that an Assistant United States Attorney had "reviewed the circumstances of the case and indicated that the USAO [United States Attorney's Office] would not be pursuing charges against Laura Sennett because there was no evidence to date to suggest that Sennett participated in the vandalism." *See* Joint Mot. for Leave to File Supplement to Summary Judgment Record (Doc. No. 88), Ex. A.

Sennett initially filed suit on September 21, 2009, alleging violations of the PPA and 42 U.S.C. § 1983. *See Sennett v. U.S. Dep't of Justice, et al.*, No. 1:09cv1063 (E.D. Va. Sept. 21, 2009) (Complaint). Sennett's complaint named the following defendants: (i) U.S. Department of Justice; (ii) U.S. Attorney General Eric Holder; (iii) FBI JTTF; (iv) Prince William County; (v) Prince William County Police Department (vi) Arlington County; (vii) Arlington County Police Department; (viii) TFO Antignano; and (ix) Arlington County Detective Jason Bryk. *Id.*

In an amended complaint filed on January 13, 2010, Sennett added ten unidentified law enforcement agents as defendants. *See Sennett v. U.S. Dep't of Justice, et al.*, No. 1:09cv1063 (E.D. Va. Jan. 13, 2010) (Amended Complaint). On February 22, 2010, the parties filed a stipulation of dismissal without prejudice as to Prince William County Police Department and Arlington County Police Department. *See Sennett v. U.S. Dep't of Justice, et al.*, No. 1:09cv1063 (E.D. Va. Feb. 22, 2010) (Stipulation of Dismissal). A second stipulation of dismissal without prejudice was filed on March 24, 2010 as to Prince William County, Arlington County, TFO Antignano, and Detective Bryk. *See Sennett v. U.S. Dep't of Justice, et al.*, No. 1:09cv1063 (E.D. Va. Mar. 24, 2010) (Stipulation of Dismissal). By Order dated March 26, 2010, the case was dismissed without prejudice as to the remaining defendants—U.S. Department of Justice, U.S. Attorney General Eric Holder, and FBI JTTF—because Sennett had failed to perfect service on those defendants within 120 days of filing her complaint, pursuant to Rule 4(m), Fed. R. Civ. P. *See Sennett v. U.S. Dep't of Justice, et al.*, No. 1:09cv1063 (E.D. Va. Mar. 26, 2010) (Order).

Sennett, proceeding *pro se*, filed a second suit on September 22, 2010, alleging violations of the PPA and the Fourth Amendment. *See Sennett v. United States*, 1:10cv1055 (E.D. Va. Sept. 22, 2010) (Complaint). Sennett named the following defendants in her complaint: (i) the United States of America; (ii) U.S. Attorney General Eric Holder; (iii) TFO Antignano; (iv) Detective Bryk; (v) Arlington County; and (vi) Prince William County. *Id.* Counsel entered an appearance for plaintiff on November 16, 2010, and filed an amended complaint on November 26, 2010. *See Sennett v. United States*, 1:10cv1055 (E.D. Va. Nov. 26, 2010) (First Amended Complaint or "FAC"). The FAC dropped U.S. Attorney General Eric Holder from the action, and it also dropped the Fourth Amendment claims. *Id.* Thereafter, four of the named

defendants—TFO Antignano, Detective Bryk, Prince William County, and Arlington County—were voluntarily dismissed from the case with prejudice, pursuant to Rule 41, Fed. R. Civ. P.[5] Thus, at this point, the sole remaining claim in the FAC is a claim against the United States for violation of the PPA.[6]

The government filed a motion to dismiss, or in the alternative for summary judgment, on December 13, 2010. After oral argument, the parties were directed to submit supplemental memoranda on issues raised during the hearing. *See Sennett v. United States*, 1:10cv1055 (E.D. Va. Jan. 21, 2011) (Order). Both parties submitted their supplemental briefs on January 28, 2011. The discovery period ended on March 11, 2011. By Order dated March 29, 2011, both parties were granted leave to supplement the summary judgment record with additional evidence. *See Sennett v. United States*, 1:10cv1055 (E.D. Va. Mar. 29, 2011) (Order). As the issues are fully briefed and the parties have had an opportunity to supplement the record with pertinent evidence, this matter is now ripe for disposition.

---

[5] *See Sennett v. United States*, 1:10cv1055 (E.D. Va. Jan. 10, 2011) (Stipulation of Voluntary Dismissal as to Defendants Vincent Antignano and Jason K. Bryk); *Sennett v. United States*, 1:10cv1055 (E.D. Va. Jan. 12, 2011) (Stipulation of Voluntary Dismissal as to Defendant Prince William County); *Sennett v. United States*, 1:10cv1055 (E.D. Va. Mar. 3, 2011) (Stipulation of Voluntary Dismissal as to Defendant Arlington County).

[6] The PPA specifically provides that persons aggrieved under the PPA shall have a civil cause of action "against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter, or against any other governmental unit, all of which shall be liable for violations of this chapter by their officers or employees while acting within the scope of employment." 42 U.S.C. § 2000aa-6(a)(1). The government does not dispute that TFO Antignano was acting within the scope of his federal office as a deputized special marshal in carrying out the investigation in issue and that it may, therefore, be held liable for TFO Antignano's conduct if his conduct violated the PPA. *Cf. Aikman v. County of Westchester*, 691 F. Supp. 2d 496, 498 (S.D.N.Y. 2010) (treating task force officer as federal employee in § 1983 action).

## II.

The threshold question is whether to treat the government's motion as a motion to dismiss or a motion for summary judgment. The government captioned its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," and the government also attached an affidavit from TFO Antignano and a video recording showing the pertinent security camera footage. In response to the government's motion, Sennett captioned her opposition brief as a "Memorandum of Points and Authorities in Opposition to the Motion of Defendant United States to Dismiss the First Amended Complaint or in the Alternative for Summary Judgment." Sennett also attached an affidavit to her opposition brief and dedicated a section of the brief to identifying material facts in dispute. After the discovery period ended, Sennett submitted additional evidence to supplement the summary judgment record. Under these circumstances, it is clear that Sennett, who was originally *pro se*, but was represented by counsel as of November 16, 2010, had reasonable notice that the government's motion could be construed as a motion for summary judgment. *See, e.g., Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Given this, and in light of the fact that extrinsic evidence submitted by both parties was considered in resolving the government's motion, it is appropriate to resolve this matter on summary judgment. *See* Fed. R. Civ. P. 12(d).

In this regard, the summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex,* 477 U.S. at 322.

### III.

The PPA was passed in response to *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), a Supreme Court decision upholding the constitutionality of a search of the *Stanford Daily* newspaper. *See* S. Rep. 96-874, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3950-51. In *Zurcher*, police officers obtained a warrant to search the newspaper's offices for photographs revealing the identities of persons who assaulted police officers during a demonstration. Reversing the district and appellate courts, the Supreme Court held that the search did not violate the Fourth Amendment, even though none of the newspaper's members were suspected of involvement in the unlawful activity. *See Zurcher*, 436 U.S. at 553-60.[7] In response, Congress enacted the PPA to afford "the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment." *See* S. Rep. 96-874, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3950.

The PPA prohibits government officials from searching for and seizing "work product materials"[8] that are intended for publication. Specifically, the statute states:

---

[7] The Supreme Court also concluded that the search did not violate the First Amendment. *See Zurcher*, 436 U.S. at 563-67.

[8] The statute defines "work product materials" as:

> [M]aterials, other than contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used, as the means of committing a criminal offense, and—

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate commerce . . . .

42 U.S.C. § 2000aa(a). The PPA also makes it unlawful for government officials to search for and seize "documentary materials"[9] possessed by a person in connection with a purpose to disseminate information to the public. *Id.* § 2000aa(b). It is important to note, however, that the PPA's prohibition on gaining access to covered materials is limited to using search and seizure to do so; the PPA does not bar the government from obtaining such materials by other lawful means such as grand jury subpoenas and voluntary requests.[10] Unlike searches and seizures pursuant to

---

> (1) in anticipation of communicating such materials to the public, are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person;
>
> (2) are possessed for the purposes of communicating such materials to the public; and
>
> (3) include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material.

42 U.S.C. § 2000aa-7(b).

[9] The statute defines "documentary materials" as:

> [M]aterials upon which information is recorded, and includes, but is not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs . . . .

42 U.S.C. § 2000aa-7(a).

[10] Although not material to the analysis here, it is worth noting that one circuit has held that the government may use grand jury subpoenas to obtain documentary materials, but not work product materials. *See Guest v. Leis*, 255 F.3d 325, 341 (6th Cir. 2001).

a warrant, these other lawful means provide an opportunity for the person in possession of the covered materials to object and perhaps prevent the government from obtaining the materials or to limit or condition access in some way.[11]

Central to this case is that the PPA's prohibition against obtaining PPA-protected materials by search and seizure is subject to an important exception, commonly referred to as the "suspect exception." Pursuant to this exception, even where "work product materials" or "documentary materials" are seized, the PPA is not violated if "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." *Id.* § 2000aa(a)(1), (b)(1). The "suspect exception" advances the goal of the PPA, which is "to protect *innocent* third parties in possession of documents and papers from governmental intrusions which would unnecessarily subject their files and papers to search and seizure." *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 567 (quoting S. Rep. 96-874, at 14 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3961) (emphasis added).

Here, the parties dispute whether the "suspect exception" bars Sennett's PPA claim. The government argues that the exception applies because there was probable cause to believe that Sennett was involved in the vandalism at the Four Seasons Hotel. Specifically, the government argues that based on the totality of the facts and circumstances there was probable cause to believe that Sennett had conspired with the vandals or aided and abetted the vandals in committing the vandalism. This, the government argues, follows chiefly from the following facts: (i) Sennett was present at the Four Seasons at approximately 2:30 a.m., arriving there

---

[11] The PPA also includes a provision allowing government officials to use search and seizure in cases where there is a valid concern that "the giving of notice pursuant to a subpoena *duces tecum* would result in the destruction, alteration, or concealment of such materials." 42 U.S.C. § 2000aa(b)(3). This exception does not apply to work product materials.

within seconds of the vandals, (ii) she wore dark clothing (as did some of the vandals), (iii) she carried a backpack (as did some of the vandals), and (iv) she fled from the hotel along with the vandals. Sennett counters by arguing that the facts available to the government do not give rise to probable cause. She also argues that the government knew she was a photojournalist, which provided an innocent explanation for her presence at the hotel. Finally, Sennett argues that an FBI memorandum noting that the United States Attorney's Office decided not to pursue charges against her conclusively establishes that the government lacked probable cause to believe that she committed an offense relating to the April 12 Four Seasons incident. For the reasons that follow, the government's argument is more persuasive.

Probable cause is a "practical, nontechnical conception," that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (internal quotation marks and citations omitted). While not subject to precise definition, the Supreme Court has explained that probable cause exists where the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Michigan v. DeFillipo*, 443 U.S. 31, 37 (1979); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) ("Probable cause exists where the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.") (internal quotation marks and citation omitted). These principles, applied here, make clear that the relevant inquiry is whether a person of reasonable caution would believe, based on the

totality of the circumstances, that Sennett committed a criminal offense in connection with the April 12 Four Seasons incident.

The security camera footage[12] taken from the Four Seasons Hotel shows that Sennett arrived at the hotel in the middle of the night—at 2:30 a.m.—within seconds of the vandals. This fact gives rise to a strong inference that Sennett communicated in some fashion with the vandals prior to the incident and may have met the vandals at a prearranged meeting spot. And the lateness of the hour is clearly significant. Demonstrations by lawful means seek to advance a viewpoint by displaying the depth and passion of that viewpoint to others. Accordingly, such demonstrations typically occur in public at a time and place where the public can observe the demonstration. By contrast, a reasonable and prudent person would be warranted in believing that a demonstration secretively planned and carried out on private property in the middle of the night is plainly intended to avoid observation by the public or the authorities because unlawful means—*i.e.*, vandalism or destruction of property—is planned. Further, similar to the vandals, Sennett was wearing dark clothing and a backpack.[13] Although Sennett was not wearing identity-concealing clothing (*e.g.*, sunglasses), some of the vandals were also not wearing identity-concealing clothing. Sennett remained outside the front entrance of the lobby, photographing the events as they unfolded with a small, handheld camera. She did not display

---

[12] The Supreme Court has endorsed the use of video footage on summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that appellate court should have viewed facts of high-speed police chase in the light depicted by a videotape of the events).

[13] In her sworn declaration, Sennett states that her backpack contained other photographic equipment, and not smoke-generating devices, paint-filled balloons, or other implements of crime. *See* 01/10/2011 Sennett Decl. ¶ 5. Yet, Sennett's declaration does nothing to change the probable cause calculus. Probable cause focuses sharply on what a reasonable officer knew at the time of the search or seizure. Here, the evidence shows that TFO Antignano knew that Sennett, like the protesters, was wearing a backpack. TFO Antignano could not have known whether the backpack actually contained contraband, and a reasonable person in his position could infer that there was a fair probability that it did.

any press credentials, nor did she carry any photographic equipment other than the small, handheld camera. Although Sennett did not enter the hotel, some of the vandals also remained outside. After the acts of vandalism were committed, Sennett fled from the area in the same direction as the vandals. *Cf. United States v. Obi*, 239 F.3d 662, 665 (4th Cir. 2001) ("It cannot be doubted that in appropriate circumstances, a consciousness of guilt may be deduced from evidence of flight . . . ."). In addition, during his investigation, TFO Antignano uncovered video footage of Sennett at other demonstrations in Washington, D.C.

Given these facts and circumstances, there was probable cause to believe that Sennett was, in some fashion, a member of this group of vandals. While the security camera footage does not show Sennett entering the hotel or participating in the acts of vandalism caught on tape, there was probable cause to believe that she had committed a criminal offense *relating to* the April 12 Four Seasons incident, such as engaging in a conspiracy to commit vandalism or aiding and abetting acts of vandalism. Indeed, a reasonable person would be warranted in believing that Sennett's role in the vandalism was to serve as the group's photographer or videographer, so that a memorialization of the event could be used to advance the group's purposes and to claim responsibility. Furthermore, the property seized at Sennett's residence during the September 23, 2008 search was related to the April 12 Four Seasons incident. Accordingly, the "suspect exception" applies and the seizure of Sennett's photographs and photographic equipment did not violate her PPA rights.

This conclusion is not undermined by Sennett's argument that each of the facts relied on by TFO Antignano is, by itself, insufficient to establish probable cause. In support, Sennett cites cases holding that wearing black clothing,[14] attending prior demonstrations,[15] being in proximity

---

[14] *Baggett v. State*, 521 So. 2d 1028, 1030 (Ct. App. Fl. 1988).

to persons committing a crime,[16] wearing a backpack, and fleeing from the area in which a crime was just committed[17] are each insufficient, by themselves, to establish probable cause. Sennett's argument misunderstands the probable cause analysis. In determining whether probable cause exists, the relevant inquiry is not whether each fact independently gives rise to probable cause, but rather whether probable cause exists in light of the totality of all the relevant facts and circumstances. *See Gates*, 462 U.S. at 238; *see also United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011) ("An assessment of the presence of probable cause must be based on the totality of the relevant circumstances . . . ."). Here, when all the facts available to TFO Antignano are considered together—that is, Sennett was present at the Four Seasons Hotel at approximately 2:30 a.m., she arrived at the same time as the vandals, she wore dark clothing (like some vandals), she carried a backpack (which some vandals used to transport smoke generating devices and paint-filled balloons), and she fled at the same time and in the same initial direction as the vandals—a reasonable person would have cause to believe that Sennett was a member of the group of vandals and conspired or aided and abetted in the commission of the April 12 Four Seasons acts of vandalism.[18]

---

[15] *Lippman v. City of Miami*, 2010 U.S. Dist. LEXIS 72457, at *36 (S.D. Fla. 2010).

[16] *Ybarra v. Illinois*, 444 U.S. 85 (1979); *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006); *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir. 1980); *Vodak v. City of Chicago*, 624 F. Supp. 2d 933 (N.D. Ill. 2009).

[17] *Smith v. United States*, 558 A.2d 312, 319 (D.C. 1989).

[18] Sennett argues that there was no probable cause to believe that she was guilty of conspiracy or aiding and abetting because the record does not contain evidence satisfying all the elements of those offenses. This argument fails because "evidence sufficient to find an individual guilty of an offense is not required to establish probable cause." *Gantt v. Whitaker*, 57 F. App'x 141, 148 (4th Cir. 2003); *see also Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) ("Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict."). And,

Sennett also argues that there was no probable cause to believe she committed a criminal offense because she was a "known photojournalist" who had published photographs of other demonstrations in the past, which provided an innocent explanation for her presence at the April 12 Four Seasons incident. According to Sennett, when the security camera footage is viewed with the knowledge that she is a photojournalist, no reasonable person could conclude that she was involved in the April 12 Four Seasons incident because the security camera footage shows that she arrived at the hotel, took photographs, and departed. Sennett argues that the only reasonable inference that can be drawn from these facts is that she was present at the vandalism solely in her capacity as a photojournalist.

Even assuming, *arguendo*, that the government was aware that Sennett was a photojournalist who had photographed other demonstrations,[19] the government nonetheless had probable cause to believe that she committed an offense relating to the April 12 Four Seasons incident. While Sennett's status as a photojournalist may provide an innocent explanation for her presence at the April 12 Four Seasons vandalism, "[t]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). In short, given all the facts and circumstances summarized above pointing to probable cause, the added information that Sennett is a photojournalist provides only "[t]he possibility of an innocent explanation [that] does not vitiate

---

based on the totality of the facts and circumstances, a reasonable person would be warranted in forming the belief that Sennett had committed conspiracy to commit vandalism or aided and abetted acts of vandalism.

[19] Sennett alleges that the government knew, prior to searching her residence, that she was a "known photojournalist" who had published photographs of other demonstrations. The government disputes Sennett's claim that she is a "known photojournalist," whatever that phrase may mean, but the government concedes for summary judgment purposes that TFO Antignano and other federal agents were aware, prior to searching Sennett's residence, that Sennett claimed to be a photojournalist and that she had taken photographs of other demonstrations.

properly established probable cause." *United States v. Booker*, 612 F.3d 592, 601 (7th Cir. 2010) (holding that federal agents had probable cause to search defendant's truck for drugs and contraband even though defendant's conduct was consistent with innocent behavior).[20] To conclude otherwise—that is, to accept Sennett's argument that her status as a photojournalist is a game changer in the probable cause analysis—is tantamount to doing what Congress declined to do, namely exclude journalists from the PPA's "suspect exception." Neither the PPA's plain language, nor the statute's purpose provides any warrant for such a reading of the PPA. Indeed, common sense flatly precludes it; a person's status as a journalist, like a person's status as a lawyer, or public official, or legislator, or judge, does not immunize the person from the strictures of the criminal law. Obviously, a person's status or profession does not mean one cannot commit a crime. Thus, the PPA's "suspect exception" applies to journalists and where, as here, the totality of the facts and circumstances would warrant a prudent person in believing that Sennett was involved in the planning or commission of the vandalism, the fact that she is a photojournalist is merely a possible innocent explanation, but does not alter the probable cause calculus.[21]

---

[20] *See also United States v. Knepper*, 256 F. App'x 982, 984 (9th Cir. 2007) (holding that police officers were not required to "rule out all possibility of innocent behavior" before arresting defendant for trespassing) (quoting *United States v. Holland*, 510 F.2d 453, 455 (9th Cir. 1975)); *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) (holding that police officer was not required to "eliminate every theoretically plausible claim of innocence" before effectuating arrest for animal cruelty) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).

[21] Of course, this does not mean that a person's status or occupation as a journalist is never relevant to the probable cause calculus. To the contrary, the fact that a person is a photojournalist who records demonstrations or a political scientist, historian, or psychologist, who records demonstrations for study and future publication is always a fact to be considered and in circumstances other than those at bar, might well be conclusive or persuasive in providing an innocent explanation that precludes a probable cause finding.

Finally, Sennett argues that the FBI memorandum requesting permission to close the Sennett investigation demonstrates that there was no probable cause to believe that Sennett committed an offense related to the vandalism at the Four Seasons Hotel. This memorandum, dated March 11, 2010, was written well after federal agents obtained a warrant, searched Sennett's home, and interviewed her. The memorandum states that an Assistant United States Attorney "reviewed the circumstances of the case and indicated that the USAO [United States Attorney's Office] would not be pursuing charges against Laura Sennett as there was no evidence to date to suggest that Sennett participated in the vandalism." *See* Joint Mot. for Leave to File Supplement to Summary Judgment Record (Doc. No. 88), Ex. A.

The FBI memorandum is not, as Sennett would have it, a "smoking gun" establishing that the government did not have probable cause to believe that Sennett committed a crime related to the April 12 Four Seasons incident. The United States Attorney's Office ultimately decided not to charge Sennett and to close the case a year and a half *after* a search of her home and an interview failed to uncover additional evidence establishing that Sennett participated in the vandalism. This decision does not mean that federal agents lacked probable cause to believe that Sennett committed an offense *at the time of the search*. *See Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) ("In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest.").[22] To the contrary, the record

---

[22] It is also well-settled that probable cause to arrest is distinct from probable cause to prosecute. *See Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004) ("An arrest grounded in probable cause does not become invalid merely because the State chooses not to prosecute the individual or a jury opts for acquittal."); *Posr v. Court Officer Shield 207*, 180 F.3d 409, 417 (2d Cir. 1999) (distinguishing probable cause to arrest from probable cause to prosecute); *Ireland v. Tunis*, 113 F.3d 1435, 1449-50 (6th Cir. 1997) (holding that a state court's finding that the prosecutor did not have "probable cause to go forward with the charges" did not "necessarily mean that probable cause to make the initial arrest was lacking"); *Williams v. Kobel*,

evidence shows that, at the time of the search, a person of reasonable caution would have been warranted in believing, based on the totality of the facts and circumstances, that Sennett was involved in the April 12 Four Seasons vandalism incident.

IV.

Because the record evidence shows that Sennett's PPA claim is barred by the "suspect exception," summary judgment must be granted in favor of the government.

An appropriate Order will issue.

Alexandria, Virginia
April 12, 2011

T. S. Ellis, III
United States District Judge

---

789 F.2d 463, 468-69 (7th Cir. 1986) (concluding that the question of probable cause to arrest and probable cause to bind over for trial at a preliminary hearing are distinct).